## Case No. 4,597.

The EXPRESS.

[Blatchf. Pr. Cas. 128.]

District Court, S. D. New York. March, 1862.

## Case No. 4,598.

The EXPRESS.

[Olc. 258;[1] 6 N. Y. Leg. Obs. 434.]

District Court, S. D. New York. Feb., 1846.[2]

---

[1] [Reported by Edward R. Olcott, Esq.]

[2] [Reversed in Case No. 4,596.]

T. Sedgwick, for libellant.
H. Morton, for claimant.

BETTS, District Judge. This cause was instituted for the recovery of damages, occasioned by a collision, and the particular feature of importance in the case is, the question of the liability of a tug, employed in her customary business, for injuries caused by the towed vessel coming in collision with a vessel at anchor. In October, 1845, a canal boat, loaded with coal from Philadelphia, was taken in tow by the tug Express, at one of the North river piers, to be hauled round to the East river, and there united with other boats, and, together with them, to be towed by the tug to Albany or Troy. The tug was at the time publicly engaged in that line of business. The master of the tow desired to be lashed alongside the tug, because his boat steered badly, but the master of the tug declined giving her that position, and threw out a hawser from his stern, fifty fathoms in length, which was attached to the bow of the canal boat, and she was taken in tow in that manner. Much testimony was given to the point whether that was a judicious and safe method of towing in this harbor. The plain weight of evidence proves that to be the usual and safe course of the business, in hauling loaded crafts of the size of the tow about the harbor, the tow fastened in that manner, being easily managed by her own helm, so as to protect herself and other vessels she may meet or pass. The tug was worked at her lowest speed, and such as was proved to be prudent and proper at the time and place, and which afforded the tow full opportunity and means of safe and easy navigation. Below Castle Garden and near Whitehall pier, the tug passed between the shore and the yacht Mist, owned by the libellant, lying at anchor, and 80 to 100 feet from her. At that point, the tow took a sheer out into the river. Ten or fifteen fathoms additional line was payed out to her

from the tug to give her free steerage. She did not recover her track, but struck the yacht abaft her forward chains, stove in her plank and some timbers, and caused very serious damage to her.

The testimony in the case is exceedingly diffuse, and not wholly reconcilable. The above facts are, in my opinion, the fair results, and present the essential points to be decided. There is no question that the yacht was properly anchored and attended to, and that no fault was committed on her part, any way conducing to the disaster. She is accordingly entitled to indemnity for the injuries she sustained from the party inflicting them, unless he can discharge himself of all blame also. The libellant contends, that the tug having supplied the motive power, and thereby forced the tow against the yacht, she is to be regarded the direct cause of the injury; that the vessel in tow is only a prolongation of the tug, and the latter is accordingly liable for the acts of the tow whilst under way, the same as for her own. If this proposition cannot be maintained, the libellant insists the tug was guilty of misconduct and negligence at the time, in her own movements, and thereby caused the collision and injuries received by the yacht.

The transportation of property and persons, by aid of steam tugs, has, within a few years, become an important branch of navigation in this harbor and the waters connected with it. In other sections of the country it is also a business of great magnitude, and vessels of all dimensions are employed in its prosecution. Sproul v. Hemmingway was an action at law against the owner of a vessel towed by a steamer with a cable run out from the stern, for damages caused by a collision with the tow. The jury found that the collision was caused by the negligence, unskilfulness or misconduct of those who had charge of the steamer (14 Pick. 1), and the court decided that the owner of the vessel towed was not, therefore, liable for the injury. The court, in rendering its decision on the verdict, assume principles of law which have a bearing on the present case, but the point adjudicated under the facts cannot be regarded as involved in this, as no fault or negligence is here found against the tug. Another case was in the supreme court of this state, and is distinguished from this one in the important feature, that the tow was lashed by the side of the tug, and the tow being the vessel injured, the question was between those two vessels as to the obligation of the tug to protect the tow from injury by other vessels. The decision turned upon the effect of a special contract of towing between the parties. Alexander v. Greene, 3 Hill, 9. These cases do not accordingly afford direct authority upon the question presented in this. The evidence now before the court clearly proves that a vessel towed in open water, in rear of another, with a fifty-fathom line, has perfect command of her

own direction, so far, at least, as to keep in the track of the tug, and to avoid all stationary objects which the latter escapes, and that such was the safest method of towing her in this case, under the facts, for the tug and tow, and other vessels they might meet with. Not only has the tow perfect command of her own course, but she can also control the direction of the tug, and the usage of the business accordingly requires a competent helmsman to be stationed at the helm of the tow, better to protect her, and to aid in the safe navigation of the tug.

The evidence further proves, that if in this case the tow line had been shortened, and the canal boat drawn near to the tug, the means of managing both safely would have been impaired; and that the tow, if competent to navigate in those waters, was placed, at the time, in a proper position. I limit myself to stating the clear result of the evidence produced on the hearing. It is not necessary to spread out its details to elucidate the principles of law adopted in this decision. They are intended to meet the state of facts attendant upon the transaction, as laid before the court by the proofs. Beyond all question, the tow is liable in this case for the damages caused by her to the yacht. The Duke of Sussex, 1 W. Rob. Adm. 274. She placed herself in connection with the tug, undertaking to navigate across the waters of the bay by aid of the propelling power thus procured, which, though not itself under her control, left her, in respect to her own movements, a perfect capacity to prevent the injury caused by her in this instance. The case of Sproul v. Hemmingway is claimed to be apposite to this, and of controlling weight on the point. It is, however, to be observed, that the case was decided with hesitation by the court, and as one of first impression.

Some of the analogies offered in support of the decision are so far equivocal, that it may not be unreasonable to suppose a review of the subject may lead the same court to doubt the justness of the rule indicated, at least to the full extent suggested. At most, it cannot be regarded as authority to the point, that a tow placed astern of a tug, is not responsible for collisions with other vessels, the same as if navigated by her own means, and independent of the aid of a tug. She selects that method of propulsion; and on general principles, by so doing, she ought to remain subject to the same liability that would attach to her if the motive power was within herself, or exclusively at her command. The Hope, 2 W. Rob. Adm. 9. Third parties, receiving an injury by collision, can rarely be required to lay the responsibility to any other agency than that which was the proximate cause of it. If a vessel is run upon by another under way, the latter must be answerable for the wrong, unless she can prove the occurrence to have been the result of inevitable accident, or without fault on her side (The George, 9 Jur. 670); and no reason is perceived why she is exonerated by having submitted herself to be moved by a steam vessel, unskilfully or incautiously managed, more than if the cause of the injury was the want of attention or prudence in the application or use of her own means of navigation. It is not inevitable to her in any other sense than if the accident resulted from the insufficiency of her own equipments to keep her in a safe course, or disengage her from a position dangerous to others, or even the incompetency of her pilot or master. If it be conceded that the conclusion of the court in Sproul v. Hemmingway is correct upon the facts found by the jury, I think the case cannot be accepted as settling the law, that a tug is responsible for damages done by vessels in her tow, whether they be lashed alongside or drawn by hawsers, except it be proved that the injury was owing to want of care or skill in the tug in performing the duties belonging to her. Chief Justice Shaw, in delivering the opinion of the court, plainly recognises a liability of the tow for her own acts. He says, "On board the ship towed astern by means of a cable, something may and ought to be done by the master and crew in steering, keeping watch, observing and obeying orders or signs, and if there be any want of care and skill in the performance of these duties, and damage ensue, then the case we have been considering does not exist; the damage is attributable to the master and crew of the tow, and she and her owners must sustain it." I think, therefore, that the case of Sproul v. Hemmingway cannot be regarded as authority to the position that the tug is primarily liable in case of collision, when caused by the culpable fault of the tow and not her own. This novel business demands an explication of legal principles adapted to its character and nature, and conducing to the protection of those concerned in it, and of the public; so that the liabilities incurred in its management may be allotted to that party alone which is justly chargeable with it.

Two distinct agencies are concerned in the operation of towing by lines, each capable of actions independent of the other. The tow in rear has the capacity of running off upon her hawser, in directions opposing the course of the tug, and to commit injuries to other vessels which the tug cannot restrain, and the tug may also compel the tow to cause like damages, which the latter has no power to prevent. The principle sought for cannot be deduced from the case supposed in Sproul v. Hemmingway, of a vessel under charter, or the liability of the owner of cargo in respect to wrongful acts of the vessel carrying it. The inquiry in those cases is, how did the injury arise? and as consequent upon that, where does the responsibility for the damages attach? To render the analogies put in Sproul v. Hemmingway pertinent to the

point raised in this case, it must be admitted that the liability of the tug is the same when the tow is navigated according to the usage of the business, as it would be were she transported upon the deck of the steamer. If so placed, she would undoubtedly have, in respect to the movements and responsibilities of the tug, no relation to other vessels with which she should be brought in collision, other than that of cargo on deck. But this supposition most inadequately figures the true character of vessels navigated by towing. The largest and most valuable shipping afloat are carried out and brought into port, and moved from point to point, and place to place, within our harbors and internal waters, by this mode of navigation, and the rule which gives the law in respect to small canal boats, worth a few hundred dollars, must settle it also essentially in relation to ships and cargoes of highest value. Clearly, they cannot furl their sails and be towed through harbors and bays, without using their own means to protect other vessels encountered, and be free from liability for damages caused by them in being so navigated. The sound doctrine, in my judgment, is still what it always was, that the vessel coming in collision with another is prima facie chargeable with the damage sustained thereby (9 Wend. 1), and the rule cannot be dependent upon her being navigated by old and well-known methods, or that her officers procure it to be done for her in some novel way, by a power communicated independent of their volition or command. It is at her hazard that she is placed under direction of such power; and if the tug which supplies it is liable for wrongful acts on her part, the tow cannot, in reason or law, claim to stand exonerated from the injury she inflicts, and which she might have avoided.

Neither, in my opinion, does the analogy of principal and agent apply to this description of business. There may be traced a degree of similitude in certain points of the relationship between the tug and tow, and that of principal and agent, so far as concerns the end to be answered by the association of the two in one business, essentially transacted by one for the benefit of the other. But the tug in executing the employment after it is entered upon, acts independently of all authority or direction of the tow and stands no way in the relation of her agent. In all respects, except the general direction of the course to be run, the tow in this case was master of her own movements, and could vary them, in respect to objects in her path, as if wholly disconnected with the steamer. The analogy is, therefore, too faint to supply any sure principle applicable to this peculiar association of vessels. It seems to me it might be defined, with a nearer approach to exactness, by regarding the tow as taking into service the power of the tug hired out to her, independent of the boat itself, or its command or direction.

If we might suppose locomotives employed on the tow-paths of canals, and the boats using that force as their propelling power, the parallel to the case under consideration would be nearer, and an illustration would be afforded indicating the responsibilities each would be placed under by the connection in towing, more correctly than is furnished by any cases familiar to the common law. It could not be supposed, under such circumstances, that the locomotive holding to its course, would be chargeable for collisions or injuries committed by the boat in the ordinary train of its navigation. The boat would be held to assume, at its peril, its own control and direction, and subordinate to propulsion ahead by a power which it could not vary or check, and differing in that only in the degree of its force, and its independence of the efforts to control it from on board the boat, from towing by hand or horse-power. The responsibilities of those mutual but independent agencies should accordingly be limited to their separate acts, except it be shown that either of them wrongfully caused a mischief to be done by the other; and it would follow that the boat, equally with the locomotive, must take on itself the precaution to shun objects in its track, or which might come within the range of its movement. When varying its line of direction to the limit of its capacity would not be sufficient to protect others from contact with it, she must have command of means, enabling her to be disconnected from the moving power, and thus have the ability to act for the safety of all in her pathway, as if using only oars or sails, or machinery attached to herself. This principle is, in effect, involved in The Hope, where the colliding vessel was warped by those towing her down the Thames. 2 W. Rob. Adm. 9.

Considering this case, then, as standing only upon the fact that the tow, whilst being properly hauled by the tug, came into collision with the yacht at anchor, I hold the responsibility therefor is not cast upon the tug, but that as the tow is the direct and immediate cause of the injury, she is the blameable party against which the remedy for the wrong is to be pursued. So the comprehensive justness of the civil law renders the culpable party alone responsible for damage occasioned by his misfeasance, his negligence, his imprudence or want of skill. Code Nap. art. 1583; Toullier, p. 3, §§ 95, 209. Each boat was separately and independently steered on this occasion, and the tow running three hundred feet in rear of the tug, with the free use of all her functions for self-direction in regard to the vessel injured, cannot, with any justness of figure or association of objects, be deemed a prolongation of the tug, subjecting the latter to the same liability for her acts as if the tow was bodily a part of her. I do not think the libellant has succeeded in proving any misconduct or want of precaution

on the part of the tug leading to the disaster, and which, upon general principles, or within the spirit of the decision in Sproul v. Hemmingway, 14 Pick. 1, might render her liable for the damage. It is a clearly settled principle in the authorities, English and American, that the vessel which sues for damages occasioned her by a collision, must prove the injury was owing to the fault of the colliding vessel. Abb. Shipp. (Shea's Ed.) pt. 3, c. 1; 3 Kent, Comm. 230. The proof that the injured one was herself blameless, would ordinarily be sufficient, prima facie, to cast the burthen of exonerating itself on the colliding vessel. Foot v. Wiswall, 14 Johns. 304. Yet there is a manifest distinction when the action is not based upon any wrongful act directly committed by the vessel sued, but upon her alleged responsibility for the acts of another, that is, in effect, for damages consequential to the fault of another. The tug not coming in contact herself with the yacht, it is not to be presumed, to her prejudice, that the act of the tow was culpable; and accordingly, the libellant is bound, as in ordinary cases resting in misfeasance, to prove that negligence, want of precaution, or other fault of the tug, caused the collision. The whole evidence being before the court, it is of little moment to this particular case, whether it is to be received as excusatory on the part of the claimant, or accusatory by the libellant; the court must judge from its entire weight and bearing, without regard to the source from which it was derived, what rights are established between the parties.

First, then, I find upon the proofs, that the method of hauling the tow, by a hawser fifty fathoms long, attached to the stern of the tug, was, at the time and place, a prudent and safe mode of towing her. That the tow was conducted carefully by the tug, on a proper route, and so as to be able to keep a safe distance from the yacht; and that with ordinary care and skill on the part of her crew, she could have kept in the wake of the tug, and been steered widely clear of the yacht. That the collision was occasioned by inattention or want of skill in steering the tow, and was not owing to any defect of equipment, or the want of navigable qualities in the tow, and that nothing was done by the tug impeding the free steerage and action of the tow, or necessarily impelling her upon the yacht. That the tow had a competent number of men stationed on watch and at the helm, and was easily steered and kept by them in the track of the tug before and after the collision, through a route equally difficult, without danger or inconvenience. The endeavor to show, on the part of the libellant, that the tow was hauled into an eddy by the tug, and thereby suddenly varied her course, giving her a sharp sheer off her track, failed of success. It was not made to appear but that the water at the place referred to was in a tranquil state, and every way favorable to the easy and safe manoeuvering of the tow. The accident is probably attributable to the want of attention or judgment of the pilot at the helm of the tow. There was ample room for her to have followed the tug between the shore and yacht, without exposure to the latter, and if the men on board had done their duty, there would have been no difficulty in her passing the yacht safely. In my opinion the risk of her navigation, under the circumstances, was not cast by law on the tug, and she is not bound to make reparation for the severe loss and injury the libellant has suffered in consequence of the fault of the tow. She is answerable for no more than her own acts of mischance, negligence, want of skill, or other culpable faults. The remedy should be pursued against the tow in this instance, and this libel must be dismissed as to the tug, with costs to be taxed.